UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 7:23-po-00901** |
| | : | |
| **V.** | : | **MAGISTRATE JUDGE** |
| | : | **THOMAS P. LeBLANC** |
| **CALEB A. HICKS** | : | |

*Consolidated with*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 7:23-po-00902** |
| | : | |
| **V.** | : | **MAGISTRATE JUDGE** |
| | : | **THOMAS P. LEBLANC** |
| **STORMIE L. HICKS** | : | |

*And consolidated with*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 7:23-po-00960** |
| | : | |
| **V.** | : | **MAGISTRATE JUDGE** |
| | : | **THOMAS P. LEBLANC** |
| **STORMIE L. HICKS** | : | |

**************************************************************************

### MEMORANDUM RULING

These consolidated misdemeanor hunting-related cases came before the undersigned for bench trial on February 6, 2024, following a waiver of the defendants' right to trial by district judge pursuant to 18 U.S.C. § 3401(b).  Following consideration of the testimony as well as the arguments of counsel and the defendants, the Court finds that the defendants are NOT GUILTY of the misdemeanors under La. R.S. § 56:109(B) with which they were charged in the citations.  The Court further finds that defendant Stormie Hicks is GUILTY of violating La. R.S. § 32:415(A) by driving with a suspended license.

# I.
## BACKGROUND

The government alleges that, on October 16, 2023, Caleb A. Hicks and Stormie L. Hicks, husband and wife, were participating in a primitive firearms deer hunting season on the Fort Polk-Vernon Wildlife Management Area (the "WMA").[1]  On that date, while the Hickses' vehicle was stopped on the roadway, Mr. Hicks allegedly fired his rifle from the passenger side of the Hickses' vehicle at wildlife beyond a tree line.  Two hunters in the immediate vicinity reported the incident to law enforcement that day.  On October 28, 2023, through investigation, law enforcement located the Hickses again on the WMA and questioned them regarding the incident.  In the course of this questioning, Ms. Hicks admitted she was the driver on both October 16th and October 28th.  A check of Ms. Hicks's driver's license revealed it was suspended on both dates, which she acknowledged.  Although the Hickses denied shooting from the roadway, citations were issued to them.  Mr. Hicks and Ms. Hicks were charged by separate citations with a violation of Louisiana Revised Statutes 56:109(B).  Ms. Hicks was also charged by additional citation with violation of Louisiana Revised Statutes 32:415 for driving with a suspended driver's license.[2]  The Hickses entered not guilty pleas to all charges, and these matters proceeded to trial before the undersigned.  After trial, the matter was taken under advisement.

---

[1] United States Army Joint Readiness Training Center Fort Polk was renamed United State Army Joint Readiness Training Center Fort Johnson in June 2023.
[2] Caleb A. Hicks's matter was docketed as 7:23-po-00901.  Stormie L. Hicks's matters were separately docketed as 7:23-po-00960 and 7:23-po-00902.  Pursuant to Rules 8 and 13 of the Federal Rules of Criminal Procedure, and with all parties' consent, these matters were tried together.

## II.
### APPLICABLE LAW AND FINDINGS OF FACT

**A.        Stormie Hicks's violation of La. R.S. § 32:415**

Louisiana Revised Statutes 32:415 provides: "It shall be unlawful for any person to operate a motor vehicle upon any public highway of this state during the period of suspension, revocation or cancellation of any license which may have been issued to him by this state or by any other state." La. R.S. 32:415(A).  On October 28, 2023, when questioned by law enforcement, Ms. Hicks acknowledged she had been operating the Hickses' vehicle that day and on October 16, 2023, and that her driver's license was suspended on both days.  These facts were related at trial by Candace Amanda Varnes, a game enforcement officer employed by the Louisiana Department of Wildlife and Fisheries assigned to the WMA, who investigated these incidents and who spoke to the Hickses on October 28, 2023.  Ms. Hicks testified at trial but did not refute Officer Varnes's testimony on this issue.  Mr. Hicks also testified at trial and confirmed Ms. Hicks was driving on both dates and that her license was suspended at all pertinent times.  Consequently, the government carried its burden and established beyond a reasonable doubt that Ms. Hicks is guilty of violating La. R.S. 32:415(A).

**B.        Defendants' alleged violation of La. R.S. § 56:109(B)**

Louisiana Revised Statutes 56:109(B) confers upon the Louisiana Wildlife and Fisheries Commission[3] "sole authority" to:

> establish all rules and regulations pertaining to the propagation, protection and harvest of all species of wildlife, including both male and female sexes of wild quadrupeds, wild birds, fish and alligators existing, propagated or released by the

---

[3] "As used throughout this title, unless the context otherwise clearly indicates differently, 'director' means the director of the Louisiana Wildlife and Fisheries Commission and 'commission' means the Louisiana Wildlife and Fisheries Commission."  La. R.S. 56:1(H).

> commission upon lands designated as wildlife management areas, wildlife refuges, public hunting grounds or outdoor recreation areas.

La. R.S. 56:109(B).  Pursuant to this authority, the Commission has adopted General Wildlife Management Area Hunting Rules and Regulations concerning the management, protection and harvest of wildlife on Wildlife Management Areas (the "Regulations"), the violation of which "will subject [the] individual to citation and/or expulsion from the management area."  *See* La. Admin. Code tit. 76, part XIX, § 111(G).  The Regulations specifically provide: "Discharging of firearms on or across, or hunting from designated roads . . . and their rights-of-way is prohibited during the modern firearms and primitive firearms deer seasons."  *Id.* at § 111(G)(4)(g).  Primitive firearms deer season on the WMA commences on the second Saturday of October and lasts for 7 days.  *Id.* at § 111(G)(17)(t)(i)(b).  October 14th was the second Saturday of the month in 2023.

In support of its charges against the Hickses for violating the Regulations, the government offered only the testimony of two witnesses:  Patrick John Johnson, III, and Officer Varnes.  Mr. Johnson testified that on October 16, 2023, he was participating in primitive firearms deer season on the WMA.  He had been hunting in the woods and around 11:40 am was approaching the tree line when he heard a vehicle on the nearby road come to a stop and then a shot was fired.  Recognizing from his military experience that the shot was traveling toward him, he took cover.  He then exited the woods and saw a vehicle on the road approximately 130 yards away with a person braced on the passenger side door with a firearm protruding from inside the vehicle.  According to Mr. Johnson, the person was in the vehicle aiming his weapon at something, and upon seeing Mr. Johnson, the individual withdrew his weapon into the vehicle, and the vehicle drove toward Mr. Johnson.  When the vehicle passed Mr. Johnson, he observed both occupants.  The vehicle then turned around, came back to where Mr. Johnson was, and stopped and asked Mr. Johnson if he needed assistance.  From these interactions, Mr. Johnson was able to identify in court

4

Ms. Hicks as the driver of the vehicle and Mr. Hicks as both the passenger and the person he previously saw "posted up" with the firearm on the passenger side of the vehicle.

Mr. Johnson also testified that another person who purported to be hunting in the area and who claimed to have heard the shot arrived shortly on the scene. Mr. Johnson did not testify to seeing Mr. Hicks fire a shot from the vehicle. He also testified that the other hunter who arrived on the scene claimed to have heard the shot, but Mr. Johnson did not relate that the other hunter claimed to have seen Mr. Hicks fire a shot.

Officer Varnes testified she received two calls on the date of the incident in temporal proximity to one another—the first from an older gentleman she identified as Clayton Gary and the other from Mr. Johnson. The day after the incident, Officer Varnes met with and obtained statements from Mr. Johnson and Mr. Gary. Officer Varnes's recounting of Mr. Johnson's statement was essentially the same as his testimony—in neither instance did Mr. Johnson say he saw Mr. Hicks fire the gun.

With respect to her discussions with Mr. Gary, Officer Varnes testified Mr. Gary, in both his call on October 16, 2023, and in his statement on October 17, 2023, reported seeing Mr. Hicks discharge his gun from his vehicle. This testimony, however, is troublesome. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Davis v. Washington*, 547 U.S. 813, 824, 126 S. Ct. 2266, 2274 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354 (2004)). The court, thus, finds Mr. Gary's statements to the agent to be testimonial statements. The Supreme Court of the United States has held that the Confrontation Clause of the Sixth Amendment[4] "bars 'admission of testimonial statements of a witness who did not appear at trial

---

[4] The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Id.* at 821 (quoting *Crawford*, 541 U.S. at 53–54). The right to confrontation may be waived, including by failure to object to the offending evidence. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 n. 3, 129 S. Ct. 2527 (2009). Because there is a presumption against the waiver of constitutional rights, waiver of such a right is effective only if it is "clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S. Ct. 1245, 1247 (1966) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938), *abrogation on other grounds recognized by Jones v. Hendrix*, 599 U.S. 465, 143 S. Ct. 1857 (2023)). The court is not satisfied that the *pro se* defendants' failure to object to the testimony about Mr. Gary's statements was intentionally done to relinquish defendants' right to confrontation. Furthermore, the government has not shown that Mr. Gary was unable to testify or that the Hickses had a prior opportunity to cross-examine Mr. Gary. The court, therefore, finds this testimony unreliable. *Crawford*, 541 U.S. at 68–69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").

The government offered no additional evidence in this matter beyond the testimony of Mr. Johnson and Officer Varnes. Both Mr. Hicks and Ms. Hicks chose to testify in their defense. Mr. Hicks denied firing any shot from his vehicle and explained the firearm he had that day was equipped with a muzzle brake that causes shots to be considerably louder. According to Mr. Hicks, because the gun is so loud when fired, doing so from inside his vehicle would have been potentially harmful to him and his wife—thus he would not do it. Officer Varnes testified Mr. Hicks denied firing from his vehicle when she interviewed him, and Mr. Hicks maintained at trial that he did not shoot from his vehicle. Instead, Mr. Hicks and Ms. Hicks both testified to hearing a shot, just as

Mr. Johnson did. To be clear, no evidence was offered to suggest Ms. Hicks fired a weapon on October 16, 2023.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). Indeed, "[t]he reasonable-doubt standard . . . provides concrete substance for the presumption of innocence— that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *Id.* at 363, 90 S. Ct. at 1072 (quoting *Coffin v. United States*, supra, 156 U.S. 432, 453, 15 S. Ct. 394, 403 (1895)). Thus, "[t]he government has the burden of proving the defendant guilty beyond a reasonable doubt[,] . . . [where] [a] 'reasonable doubt' is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case." *Fifth Circuit Pattern Jury Instructions (Criminal Cases),* No. 1.05 (2019 ed.). "It is . . . important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." *In re Winship*, 397 U.S. at 364, 90 S. Ct. at 1073.

To support a conviction under La. R.S. 56:109(B) and the pertinent portion of the Regulations, the government must prove "[d]ischarging of a firearm" by the defendants. The evidence establishes there were multiple people hunting at the WMA on the date in question, including Mr. Johnson, Mr. Gary, and the Hickses, and presumably others. The evidence also establishes that multiple people claimed to have heard a gunshot. This evidence, however, does not exclude the reasonable possibility that someone other than Mr. Hicks fired that shot. In this case, the court finds that, while the evidence presented may suggest more probably than not Mr.

7

Hicks fired his weapon, there is not sufficient reliable evidence to establish beyond a reasonable doubt that he did so. Consequently, the court concludes the government has not carried its burden with respect to these charges against Mr. Hicks and Ms. Hicks.

### III.
#### CONCLUSION

The Court finds the defendants, Caleb A. Hicks and Stormie L. Hicks, NOT GUILTY of discharging a firearm from their vehicle in violation of La. R.S. 56:109(B), as charged in the citations. The Court further finds the defendant Stormie L. Hicks GUILTY of driving with a suspended license in violation of La. R.S. 32:415, as charged in the citation. These conclusions will be memorialized in the accompanying Judgment in a Criminal Case.

THUS DONE AND SIGNED in Chambers this 4th day of March, 2024.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE